224 P.3d 935

**AMTRUST BANK, a division of Ohio Savings Bank, a financial institution, Plaintiff/Appellee,**

v.

**Ricki R. FOSSETT and Diane Lynn Fossett, husband and wife, Defendants/Appellants.**

No. 1 CA–CV 08–0840.

Court of Appeals of Arizona, Division 1, Department A.

Dec. 15, 2009.

Gust Rosenfeld, PLC by Madeleine C. Wanslee, Christina M. Noyes, Phoenix, Attorneys for Plaintiff/Appellee.

Law Offices of Michael E. St George, PC by Michael E. St George, Tempe, Attorneys for Defendants/Appellants.

## OPINION

JOHNSEN, Judge.

¶ 1 Years after the borrowers in this case defaulted on a loan, the lender issued a federal tax Form 1099–C indicating the debt was cancelled. The lender then sued the borrowers on the obligation. On summary judgment, the borrowers did not dispute the default, but argued they were not liable because the lender had cancelled the debt. We hold that while issuance of a Form 1099–C may be prima facie evidence of cancellation of a debt, the lender may rebut that evidence by showing that when it issued the form it did not intend to forgive the obligation.

## FACTS AND PROCEDURAL HISTORY

¶ 2 When Ricki R. and Diane Lynn Fossett bought a car in 2001, they entered into a purchase money security agreement, which was assigned to Amtrust Bank. The Fossetts made no payments on the loan after May 2002; their car was repossessed and sold in January 2003, leaving a deficiency of $19,727.86. In February 2005, Amtrust sent the Fossetts a Form 1099–C. The form Amtrust issued is a standard federal tax form titled "Cancellation Of Debt." In the box on the form labeled "Amount of debt cancelled" was typed "17594.31." Believing Amtrust had cancelled the deficiency, the Fossetts included $17,594.31 from the discharge of the debt when they reported their income for that tax year.

¶ 3 Amtrust later sued the Fossetts, alleging breach of the loan agreement. The Fossetts moved for summary judgment, arguing that the Form 1099–C constituted a cancellation of the debt by Amtrust. Amtrust filed a "Response to Defendants' Motion for Summary Judgment and Cross-Motion for Summary Judgment." Although its filing was labeled a cross-motion, Amtrust did not seek summary judgment on its own behalf, but

argued only that a question of fact prevented entry of summary judgment in the Fossetts' favor. The superior court denied the Fossetts' motion and entered judgment for Amtrust. The Fossetts filed a timely notice of appeal; we have jurisdiction pursuant to Arizona Revised Statutes ("A.R.S.") section 12–2101(B) (2003).

## DISCUSSION

### A. Standard of Review.

■ ¶ 4 We review the grant of summary judgment *de novo. Wilson v. U.S. Elevator Corp.*, 193 Ariz. 251, 253, ¶ 5, 972 P.2d 235, 237 (App.1998). Summary judgment is proper when "the pleadings, deposition, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact." Ariz. R. Civ. P. 56(c). On appeal from a grant of summary judgment, we review the record in the light most favorable to the nonmoving party. *Unique Equip. Co. v. TRW Vehicle Safety Sys., Inc.*, 197 Ariz. 50, 52, ¶ 5, 3 P.3d 970, 972 (App.1999).

### B. Questions of Fact Remain Concerning the Issuance of the Form 1099–C.

■ ¶ 5 Generally accepted accounting principles require that when a retail loan is past due for a specific period of time, the lender must reclassify the debt as a loss and write it off. *See Kelly v. Wolpoff & Abramson, L.L.P.*, 634 F.Supp.2d 1202, 1209 (D.Colo.2008). In that circumstance a lender may or may not decide to cease trying to collect on the debt. *See, e.g., In re Zilka*, 407 B.R. 684, 689 (Bankr.W.D.Pa.2009).

¶ 6 Under federal law, a lender that "discharges" a debt must report the discharge to the Internal Revenue Service ("IRS"). A lender "which discharges ... the indebtedness of any person during any calendar year shall make a return. setting forth ... the name, address, and [taxpayer identification number] of each person whose indebtedness was discharged." 26 U.S.C. § 6050P(a) (2002). The information return the lender must file with the IRS in that event is a Form 1099–C. 26 C.F.R. § 1.6050P–1(a)(1) (2009).

¶ 7 A lender that files a Form 1099–C with the IRS also must furnish the same information to the borrower. 26 U.S.C. 6050P(d)(1)-(2). Under federal tax law, "[i]ncome from discharge of indebtedness" is includable within gross income. 26 U.S.C. § 61(a)(12) (2002). The copy of the Form 1099–C a lender provides to the borrower "informs the debtor of the amount of the debt that has been discharged and that the debtor must generally report the discharged amount as income on his federal income tax return." *Franklin Credit Mgmt. Corp. v. Nicholas*, 73 Conn.App. 830, 812 A.2d 51, 61 (2002). The requirement that a lender report discharged debt allows the IRS "to compare the amount of discharged debt reported by various institutions with the amount of discharged debt reported by individuals." *Debt Buyers' Ass'n v. Snow*, 481 F.Supp.2d 1, 5 (D.D.C. 2006).

¶ 8 In this case, Amtrust provided notice that it had "discharged" debt by sending the Fossetts a copy of the Form 1099–C it filed with the IRS. *See* 26 C.F.R. § 1.6050P–1(f)(2). At issue in the Fossetts' summary judgment motion was whether the Form 1099–C constituted a "discharge" of the Fossetts' debt for purposes of Arizona law. Whether a lender has discharged a debt signified by a written instrument is governed in this state by A.R.S. § 47–3604(A) (2005), which provides in relevant part that a discharge may occur

1. By an intentional voluntary act, such as surrender of the instrument to the party, destruction, mutilation or cancellation of the instrument, cancellation or striking out of the party's signature or the addition of words to the instrument indicating discharge; or

2. By agreeing not to sue or otherwise renouncing rights against the party by a signed writing.

¶ 9 The Fossetts argued in their summary judgment motion that by issuing the Form 1099–C, Amtrust "agree[d] not to sue or otherwise renounce[d]" its rights against them within the meaning of A.R.S. § 47–3604(A)(2). In response, Amtrust relied on

an affidavit of its collection manager stating that by issuing the Form 1099–C, Amtrust did not intend to renounce, forgive or cancel the debt. Amtrust argued that although Form 1099–C is titled "Cancellation of Debt," pursuant to federal regulation, a lender may issue the form even though it has not actually cancelled the debt. *See* 26 C.F.R. § 1.6050P–1(a)(1) (2009); *Snow*, 481 F.Supp.2d at 5 ("the regulation stipulates that a Form 1099–C must be filed under certain conditions regardless of whether or not the debt in question has actually been discharged").

¶ 10 According to its collection manager, Amtrust issues a Form 1099–C "[s]olely for tax purposes" whenever it has not "received any payments upon the expiration of a twenty four month period from the date of sale of a repossessed vehicle." Based on that affidavit, Amtrust argued that it issued the form to the Fossetts not because it intended to cancel their debt but because it was required to after the Fossetts made no payments on the loan during a "testing period" pursuant to federal regulation.

¶ 11 As Amtrust argues on appeal, the applicable regulation permits (and may require) a lender to issue a Form 1099–C to a debtor under certain circumstances regardless of whether the lender intends to cancel or forgive the debt. According to the regulation, a lender must issue a Form 1099–C upon the occurrence of an "identifiable event." 26 C.F.R. § 1.6050P–1(a)(1). Although an "identifiable event" includes a discharge of the debt by decision or agreement of the lender, *id.* § 1.6050P–1(b)(2)(i)(F), -

(G), it also includes "the expiration of the non-payment testing period," *id.* § 1.6050P–1(b)(2)(i)(H). Amtrust argues that it issued the Form 1099–C to the Fossetts not because it forgave their debt but because a "non-payment testing period" expired, within the meaning of the regulation.[1]

■ ¶ 12 We agree with the Fossetts that Amtrust's issuance of the Form 1099–C is prima facie evidence that it had discharged their debt within the meaning of Arizona law. *Cf. Franklin Credit*, 812 A.2d at 60 (under Connecticut law, Form 1099–C was sufficient evidence on which to determine a discharge of debt had occurred when lender argued it had issued the form by mistake but presented no evidence of mistake). In responding to the Fossetts' motion, however, Amtrust submitted evidence (by way of the affidavit referenced *supra* ) sufficient to create a genuine issue of material fact about whether it intended to cancel the debt and whether, as a consequence, the debt was discharged. *See In re Zilka*, 407 B.R. at 688–90 (under Pennsylvania law, issuance of Form 1099–C does not constitute an admission that debt was forgiven and does not operate as a discharge of debt).[2]

¶ 13 While Amtrust submitted evidence sufficient to create an issue of fact as to whether it had discharged the Fossetts' debt, as noted, it did not ask the court to enter judgment in its favor. We conclude that the record before the superior court presented issues of fact that precluded entry of judgment in Amtrust's favor. Amtrust, for exam-

---

1. Under the regulation, "[t]here is a rebuttable presumption that an identifiable event" has occurred if a creditor "has not received a payment on an indebtedness" during a "testing period" of 36 months. 26 C.F.R. § 1.6050P–1(b)(2)(iv). The presumption that "an identifiable event" has occurred by virtue of expiration of a non-payment testing period may be rebutted if the lender "has engaged in significant, bona fide collection activity" during the period "or if facts and circumstances existing as of January 31 of the calendar year following expiration of the 36-month period indicate that the indebtedness has not been discharged." *Id.*

2. By providing for issuance of a form called "Cancellation Of Debt" even when a lender may not intend to release debt, 26 C.F.R. § 1.6050P is

all but certain to confuse borrowers who receive the form under those circumstances. Indeed, without acknowledging that the amount stated on the form might not represent a debt actually forgiven, the form instructs the taxpayer that "[g]enerally, if you are an individual, you must include the canceled amount on the 'Other income' line of Form 1040." As one court has noted, a lender that issues a Form 1099–C when it still intends to try to collect on the debt might alert the borrower to that effect. *Snow*, 481 F.Supp.2d at 14 ("no reason that [the lender] cannot include with its statement to an affected debtor an instructional guideline explaining the reasons for the issuance of the 1099–C ... and a notice to the debtor that [the lender] plans to continue debt collection activities").

ple, offered no evidence of its policies or practices with regard to debt cancellation or issuance of Forms 1099–C in February 2005, when it sent the form at issue. Moreover, although Amtrust argues it issued the Form 1099–C to the Fossetts pursuant to a 24–month "testing period," the regulation defines a "testing period" to be a period of 36 months, not 24 months. *See* 26 C.F.R. § 1.6050P–1(b)(2)(iv); note 2 *supra.*

¶ 14 Accordingly, without expressing an opinion on the ultimate outcome, we conclude an issue remains as to whether Amtrust's issuance of the Form 1099–C to the Fossetts was required by 26 C.F.R. § 1.6050P–1(b)(2)(i)(G) (following an actual discharge of indebtedness) or 26 C.F.R. § 1.6050P–1(b)(2)(i)(H) (following the "expiration of the non-payment testing period"). If federal law did not require Amtrust to issue the cancellation form, then that is a factor bearing on whether the Fossetts remain liable for the debt.

### CONCLUSION

¶ 15 For the reasons set forth above, we affirm the superior court's denial of the Fossetts' motion for summary judgment but reverse the summary judgment it entered in favor of Amtrust, and remand for further proceedings consistent with this Opinion.[3]

CONCURRING: MAURICE PORTLEY and DANIEL A. BARKER, Judges.

---

**3.** The Fossetts argue Amtrust should be equitably estopped from pursuing the deficiency because they reasonably relied on the Form 1099–C by paying taxes on the amount of the debt that ostensibly was forgiven. They did not raise this issue in the superior court, however, and for that reason we will not consider it on appeal although they may raise it on remand. *See Contempo*

*Constr. Co. v. Mountain States Tel. & Tel. Co.,* 153 Ariz. 279, 282, 736 P.2d 13, 16 (App.1987); *see also Long v. Turner,* 134 F.3d 312, 319 (5th Cir.1998) (borrowers who paid tax on "income" reported when lender issued Form 1099–C were not relieved of the debt but were entitled to a credit in the amount of the tax they paid).