J-A22044-15

2016 PA Super 56

| ANTHONY AND PAULA VERDINI, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellants | |
| v. | |
| FIRST NATIONAL BANK OF PENNSYLVANIA, | |
| Appellee | No. 248 MDA 2015 |

Appeal from the Order Entered January 13, 2015
in the Court of Common Pleas of York County
Civil Division at No.: 2013-SU-002909-89

BEFORE: BOWES, J., JENKINS, J., and PLATT, J.[*]

OPINION BY PLATT, J.:                              **FILED MARCH 03, 2016**

Appellants, Anthony and Paula Verdini, appeal from the order entered

on January 13, 2015 that denied their motion for summary judgment and

granted the motion for summary judgment of Appellee, First National Bank

of Pennsylvania. We affirm.

The trial court aptly set forth the background facts of this case as

follows:

> A complaint was filed by [Appellants] on August 15, 2013.
> The circumstances alleged in [the] complaint are as follows:
> [Appellants] obtained a second non-purchase money mortgage
> ("the debt") . . . and later defaulted on the debt; on or about
> December 31, 2012, [Appellee] . . . issued [Appellant] Anthony
> Verdini a 1099-C form; in 2013, [Appellants] requested the debt
> be marked satisfied so that the [subject] property . . . could be

_____

[*] Retired Senior Judge assigned to the Superior Court.

sold and [Appellee] refused to do so until $37,744.73 was paid; [Appellants] paid the amount requested. As a result of their payment of the debt, which they assert [Appellee] had cancelled months prior, [Appellants] raised several claims: (1) breach of contract; (2) violation of the Fair Credit Extension Uniformity Act (hereinafter "FCEUA"); (3) violation of the Unfair Trade Practices and Consumer Protection Law (hereinafter "UTPCPL"); and (4) unjust enrichment.

On September 26, 201[3], [Appellee] answered the complaint.

On September 9, 2014, [Appellee] filed a motion for summary judgment . . . . [Appellants] filed a response . . . and cross-motion for summary judgment on September 17, 2014 . . . .

(Trial Court Opinion, 1/13/15, at unnumbered pages 1-2) (some capitalization omitted).

On January 13, 2015, the court granted Appellee's motion for summary judgment and denied Appellants' cross-motion after argument thereon. Appellants timely appealed.[1]

Appellants raise nine issues for our review:

A. Whether the trial court erred by granting summary judgment for [Appellee], and denying summary judgment for [Appellants?]

B. Whether [Appellee] cancelled [the debt?]

C. Whether [Appellee] had a duty to satisfy the mortgage on [Appellants'] residence after [it] cancelled the [debt?]

_____

[1] Appellants filed a timely statement of errors complained of on appeal on February 13, 2015 pursuant to the court's order. *See* Pa.R.A.P. 1925(b). The trial court filed a Rule 1925(a) opinion on February 13, 2015 in which it relied on the opinion filed on January 13, 2015 in support of its summary judgment decision. *See* Pa.R.A.P. 1925(a).

D. Whether [Appellee] violated the [FCEUA] by harassing, oppressing and abusing [Appellants] in violation of FCEUA §[]2270.4(4), by collection of the [debt] after [it] had been cancelled by [Appellee?]

E. Whether [Appellee] violated FCEUA by falsely representing the character or legal status of the [debt] after its cancellation by [Appellee] in violation of FCEUA §[]2270.4(5)[?]

F. Whether [Appellee] violated FCEUA by the use of unfair or unconscionable means to collect the [debt] in violation of FCEUA §[]2270.4(6)[?]

G. Whether [Appellee] violated the [UTPCPL] by [its] violations of FCEUA[?]

H. Whether [Appellee] was unjustly enriched when it obtained payment of the [debt] after [it] cancelled the [debt?]

I. Whether the trial court failed to view the record in the light most favorable to the non-moving party, [Appellants], by granting [Appellee's] motion for summary judgment[?]

(Appellants' Brief, at 4-5).

We will address Appellants' first two questions first because they are related where, in addressing them, they argue[2] that the court erred when it

_____

[2] The argument section of Appellants' brief violates Pennsylvania Rule of Appellate Procedure 2119(a) in that "[t]he argument [is not] divided into as many parts as there are questions to be argued[.]" Pa.R.A.P. 2119(a); (**see also** Appellants' Brief, at 12-31). Specifically, the argument portion of the brief contains only eight sections. (**See** Appellants' Brief, at 12-31). Indeed, the contents of the arguments under the first two headings, "summary of the trial court's decision[,]" and "the majority view[,]" both address Appellants' second issue, which does not have an express section of its own. (**Id.** at 12, 18 (capitalization omitted)). However, because we can
*(Footnote Continued Next Page)*

found there was no issue of material fact, and granted summary judgment in favor of Appellee on the basis that Appellants failed to prove that Appellee cancelled the debt.[3]  (***See id.*** at 4, 12-22; Trial Ct. Op., at unnumbered pages 8-10).

Our standard of review of a court's order granting or denying summary judgment is well-settled:

> A reviewing court may disturb the order of the trial court only where it is established that the court committed an error of law or abused its discretion.  As with all questions of law, our review is plenary.
>
> In evaluating the trial court's decision to enter summary judgment, we focus on the legal standard articulated in the summary judgment rule.  Pa.R.C.P. 1035.2.  The rule states that where there is no genuine issue of material fact and the moving party is entitled to relief as a matter of law, summary judgment may be entered.  Where the non-moving party bears the burden of proof on an issue, he may not merely rely on his pleadings or answers in order to survive summary judgment.  Failure of a nonmoving party to adduce sufficient evidence on an issue essential to his case and on which it bears the burden of proof establishes the entitlement of the moving party to judgment as a matter of law.  Lastly, we will view the record in the light most favorable to the non-moving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party.

***Byoung Suk An v. Victoria Fire & Cas. Co.***, 113 A.3d 1283, 1287-88 (Pa. Super. 2015) (case citation omitted).

*(Footnote Continued)* ─────────

discern Appellants' arguments, we will not deem their claims waived for the technical non-compliance with the briefing requirements.

[3] All of the causes of action in the complaint required evidence that Appellee cancelled Appellants' debt.  (Complaint, 8/15/13, at 3-5 ¶¶ 10, 12, 15, 18).

Here, the trial court granted summary judgment on the basis that "charging off the debt . . . did not cancel the debt. Similarly, the issuance of a 1099-C form is not an admission that the debt has been cancelled and the issuance of the form does not discharge [Appellants] from further liability."[4] (Trial Ct. Op., at unnumbered page 9). We agree.

As a preliminary matter, we observe that this is an issue of first impression in this Court. Our review of the caselaw has revealed no case in either the Pennsylvania Superior or Supreme Court that has addressed the legal consequences of the charge-off of a debt on the debtor's responsibility to pay a remaining balance, or whether issuing an IRS Form 1099-C evidences a debt's cancellation. However, *In re Zilka*, 407 B.R. 684 (W.D. Pa. 2009),[5] provides persuasive, well-reasoned analysis that is consistent with the majority of courts in the United States, and we cite it with approval.

_____

[4] It is well-settled that:

> . . . A trial court's application of a statute is a question of law that compels plenary review to determine whether the court committed an error of law. This Court has reviewed code provisions similarly. As with all questions of law, the appellate standard of review is *de novo* and the appellate scope of review is plenary.

*Ramalingam v. Keller Williams Realty Group*, ___ A.3d ___, 2015 WL 4927797 at *4 (Pa. Super. filed Aug. 18, 2015) (citations omitted).

[5] The decisions of the lower federal courts and other states' courts may provide persuasive, although not binding, authority. *See Gongloff Contracting, L.L.C. v. Architects and Engineers, Inc.*, ___ A.3d ___,
*(Footnote Continued Next Page)*

- 5 -

*In re Zilka* involved a motion to confirm the proofs on claims filed by the bank in a chapter seven bankruptcy action. *See In re Zilka*, *supra* at 686. The bank claimed it was owed money on an outstanding, delinquent debt, and the debtor claimed, much like Appellants herein, that the bank was not owed any money because it had charged-off the debt and issued him an IRS Form 1099-C, Cancellation of Debt. *See id.* at 686. In considering these positions, the court first examined whether the charge-off of a debt is the same as cancelling it.

> As an initial matter, the Court holds, as a matter of law, that when a lender issues an account statement to its borrower indicating that an outstanding loan balance equals $0.00 because such loan has been charged off, such "is not the legal equivalent of forgiving [—i.e., discharging liability on—] a debt." *Discover Bank v. Worsham*, 176 P.3d 366, 368 (Okla.Civ.App.2007) ("notation on Cardholder's August 30, 2002 statement which reads: 'Internal charge off' of $8,823.48 resulting in a zero balance . . . [only] reflects Discover's accounting procedure for removing the account from active status"); *Unifund CCR Partners v. Urban*, 2005 WL 3624541 at *1 (Conn.Super.Ct.2005) (same); *Mitchell Bank v. Schanke*, 268 Wis.2d 571, 676 N.W.2d 849, 854 n. 7 (2004) ("A 'write off' does not mean that the institution has forgiven the debt or that the debt is not still owing"); *Central Home Trust Co. of Elizabeth v. Lippincott*, 392 So.2d 931, 933 (Fla.Dist.Ct.App.1980) (same). . . .[6]

*(Footnote Continued)* ―――――――――――

2015 WL 4112446, at *7 n.6 (Pa. Super. filed July 8, 2015); *Huber v. Etkin*, 58 A.3d 772, 780 n.8 (Pa. Super. 2012), *appeal denied*, 68 A.3d 909 (Pa. 2013).

[6] Appellants identify the cases cited here by *In re Zilka* as those that "[t]he trial court cited . . . to support its conclusion that charging off the debt was not the equivalent of cancelling the debt." (Appellants' Brief, at 13) (citations omitted); (*see also id.* at 13-17). However, the cases only

*(Footnote Continued Next Page)*

- 6 -

*Id.* at 687; *see also Kelly v. Wolpoff & Abramson, L.L.P.*, 634 F.Supp.2d 1202, 1208 (D. Colo. 2008) (observing that "'charging off' essentially amounts to a ledger book reclassification and is an accounting practice" that does not extinguish the debt) (citation omitted).

In this case, Appellee sent Appellants a notice of charge-off months before it ultimately occurred. (*See* Notice of Charge-Off, 1/07/12, at 1). The notice contained the following express language: "You are aware the charged off balance is your responsibility. It is legally enforceable and collectable[.]" (*Id.*). Therefore, based on the relevant caselaw, *see In re Zilka*, *supra* at 686, and the language of the express notice provided to Appellants, (*see* Notice of Charge-Off, 1/07/12, at 1), we conclude that the trial court did not err when it found that Appellee's charge-off of the debt did not cancel their responsibility to pay it. Appellants' argument regarding the effect of a charge-off lacks merit.[7]

*(Footnote Continued)* _____

appear in the trial court's opinion as a parenthetical to its citation of *In re Zilka*, without any discussion of, or reliance on, them. (*See* Trial Ct. Op., at unnumbered page 9). Therefore, Appellants' argument that "each of the[] cases relied upon by the trial court is distinguishable from the facts here in material ways[,]" is misleading. (Appellants' Brief, at 13). Moreover, Appellants' attempt to distinguish the cases on their facts has no bearing on the limited legal principle for which they were cited by *In re Zilka*.

[7] Appellants do not argue that the issuance of the Form 1099-C itself cancelled the debt. (*See* Appellants' Brief, at 18 (stating that "[Appellee] had cancelled the [debt] before the [Form] 1099-C was issued.")). Therefore, because we have determined that the court properly found that
*(Footnote Continued Next Page)*

Next, we turn to Appellants' allegation that the charge-off and filing of the Form 1099-C cannot be viewed in isolation, but instead that the trial court erred when it found that Appellee's issuance of a Form 1099-C was not further evidence of the debt's cancellation. (**See** Appellants' Brief, at 18). This claim requires us to consider whether the trial court properly interpreted the language contained in the Internal Revenue Code tax statute, 26 U.S.C.A. § 6050P(a). We conclude that it did.

As observed in **In re Zilka**:

> 26 U.S.C. § 6050P(a) provides, in pertinent part, that "[a]ny applicable entity which discharges . . . the indebtedness of any person during any calendar year shall make a return . . . setting forth . . . the name, address, and TIN of each person whose indebtedness was discharged . . . [, as well as] the date of the discharge and the amount of the indebtedness discharged." 26 U.S.C. § 6050P(a)(1)-(2) (West 2007). The information return just referred to shall be a Form 1099–C, which return must be filed with the Internal Revenue Service. **See** 26 C.F.R. § 1.6050P–1(a)(1) (West 2009). Every applicable entity which makes such a return must also "furnish to each person whose name is required to be set forth in such return a written statement showing . . . the name and address of the [applicable] entity . . ., and . . . the information required to be shown on the return with respect to such person." 26 U.S.C. § 6050P(d)(1)-(2) (West 2007). The written statement just referred to can be copy B of the Form 1099–C. **See** 26 C.F.R. § 1.6050P-1(f)(2) (West 2009). 26 C.F.R. § 1.6050P–1(a)(1) also provides that:
>
> > Solely for purposes of the reporting requirements of section 6050P and this section, a

_____
*(Footnote Continued)*

the charge-off did **not** cancel the debt, our inquiry could end here. However, for the sake of completeness, we will review the legal consequences of the filing and issuance of a Form 1099-C.

discharge of indebtedness is deemed to have occurred . . . if and only if there has occurred an identifiable event described in paragraph (b)(2) of this section, **whether or not an actual discharge of indebtedness has occurred** on or before the date on which the identifiable event has occurred.

26 C.F.R. § 1.6050P–1(a)(1). . . .

*In re Zilka*, *supra* at 687 (emphasis added).

Pursuant to the tax regulation, an identifiable event includes "the expiration of the non-payment testing period, as described in § 1.6050P–1(b)(2)(iv)."  26 C.F.R. § 1.6050P-1(b)(2)(H).  Section (b)(2)(iv) states, in pertinent part, that:

There is a rebuttable presumption that an identifiable event under paragraph (b)(2)(i)(H) of this section has occurred during a calendar year **if a creditor has not received a payment on an indebtedness at any time during a** testing period (as defined in this paragraph (b)(2)(iv)) ending at the close of the year. The testing period is a **36–month period**[.]

26 C.F.R. § 1.6050P–1(b)(2)(iv) (emphases added).

In construing the effect of the issuance of a Form 1099-C on outstanding debt, the court in *In re Zilka* reasoned that the issuance of a Form 1099-C is not an admission of a debt's cancellation.  This is consistent with the regulation's plain meaning, the interpretation by the IRS itself, and the majority of courts in the United States.  *See In re Zilka*, *supra* at 688; *see also Cashion*, *infra* at 179; *Lifestyles of Jasper*, *infra* at 277; *Kelly*, *infra* at 1209-10.  We find this interpretation persuasive.

Specifically, the court observed:

First, "**[t]he Internal Revenue Service**[, which regulatory agency is the one that promulgated 26 C.F.R. § 1.6050P–1, and whose interpretation of the same is thus entitled to great deference, ***see Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.,*** 467 U.S. 837, 843–845, 104 S.Ct. 2778, 2782–2783, 81 L.Ed.2d 694 (U.S.1984),] **does not view a Form 1099–C as an admission by the creditor that it has discharged the debt and can no longer pursue collection [thereon].**" I.R.S. Info. Ltr. 2005–0207, 2005 WL 3561135 (Dec. 30, 2005) (next-to-last paragraph, construing 26 C.F.R. § 1.6050P–1(a)); ***see also*** I.R.S. Info. Ltr.2005–0208, 2005 WL 3561136 (Dec. 30, 2005) (Q & A # 5, 26 U.S.C. "Section 6050P and the regulations do not prohibit collection activity after a creditor reports by filing a Form 1099–C"); ***Sims v. Commissioner***, T.C. Summ.Op.2002-76, 2002 WL 1825373 at *2 (U.S.Tax Ct.2002) (evidence that Form 1099–C was issued does not establish that petitioner's debt was ever discharged); ***Debt Buyers' Association v. Snow***, 481 F.Supp.2d 1, 13-14 (D.D.C. 2006) (the status of a debt described on a Form 1099–C is not falsely represented if, when providing such Form 1099–C to a debtor, a creditor attaches thereto a notice that such creditor plans to continue debt collection activities with respect to such described debt).[8] Therefore, regardless of the reason why [the bank] issued the [] Form[] 1099–C, [the bank's] issuance of such form[] constitutes neither an admission by [it] that it . . . discharged the Debtor from further liability on any of [the bank's] [] claim[].

***Id.*** (emphases added); ***see also F.D.I.C. v. Cashion***, 720 F.3d 169, 179 (C.A. 4th Cir. 2013) (holding Form 1099-C is "creditor's required means of satisfying reporting obligation to IRS; not a means of accomplishing an

---

[8] We acknowledge that Appellee has not presented any evidence that it attached a notice that it plans to continue debt collection activities to the Form 1099-C, as the creditor did in ***Debt Buyers'***, ***supra***. ***See Debt Buyers'***, ***supra*** at 13-14; (***see also*** IRS Form 1099-C, 12/31/12). However, Appellee provided Appellants with notice of their continued responsibility to pay the outstanding debt when it forwarded them a notice of the charge-off. (***See*** Notice of Charge-Off, 1/07/12, at 1).

actual discharge of debt, nor is it required only where an actual discharge has already occurred."); ***Lifestyles of Jasper, Inc. v. Gremore***, 299 S.W.3d 275, 277 (C.A. Kentucky 2009) (noting that "the regulations and I.R.S. rulings make clear that Form 1099–C is to be utilized for reporting purposes only, and not as evidence of an actual discharge of indebtedness.") (footnotes omitted); ***Kelly v. Wolpoff & Abramson, L.L.P.***, 634 F.Supp.2d 1202, 1209-10 (D. Colo. 2008) (Form 1099-C reflects accounting principle of charging off, not extinguishment of debt as matter of law).[9]

Here, it is undisputed that, on November 27, 2009, Appellants obtained a $40,000.00 home equity loan from Appellee, which was secured by a second mortgage. (***See*** Appellants' Brief, at 7; Appellee's Brief, at 2). Appellants defaulted on the loan within the first thirty-six months, and, on January 7, 2012, Appellee sent them a notice of charge-off which contained clear language informing them that they remained responsible for the balance due. (***See*** Notice of Charge-Off, 1/07/12, at 1); (***see also*** Appellants' Brief, at 7). On December 19, 2012, Appellee charged-off the loan and, on December 31, 2012, it issued to Appellants, and submitted to

_____

[9] We are cognizant that there are a minority of cases which hold that a Form 1099-C is *prima facie* evidence of the creditor's intent to cancel a debt, requiring a lender to then provide evidence of its intent. ***See, e.g.***, ***Amtrust Bank v. Fossett***, 224 P.3d 935, 936-38 (Ariz. Ct. App. 2009); ***Franklin Credit Mgmt. Corp. v. Nicholas***, 812 A.2d 51, 60 (Conn.App. 2002), *cert. denied*, 815 A.2d 136 (Conn.S.Ct. 2003). However, we find the cases in the majority, which rely on the IRS's interpretation of its own regulations, to be legally persuasive.

the IRS, the required IRS Form 1099-C for 2012 pursuant to the taxation requirements of 26 C.F.R. § 1.6050P–1. (**See** IRS Form 1099-C, 12/31/12, at 1); (**see also** Appellants' Brief, at 8).

Pursuant to the language of section 1.6050P–1 and its interpretation by both the majority of United States federal and state courts and the IRS itself, we conclude that the trial court properly found that issuing the Form 1099-C did not evidence a cancellation of Appellants' debt. It was a required IRS filing after Appellee experienced an identifiable event, *i.e.* Appellants' non-payment within the testing period.[10]  **See** 26 C.F.R. § 1.6050P–

_____

[10] Appellants' argument that **Cashion**, **supra**, required the trial court herein to conduct a different analysis and arrive at a finding that Appellee cancelled the debt is not legally persuasive. (**See** Appellants' Brief, at 18-22). In fact, **Cashion** expressly states that the analysis taken by the majority of courts, which "relies principally on the language of the IRS regulations and the purpose of a Form 1099–C[,]" **Cashion**, **supra** at 178 (citations omitted), compels a finding "that filing a Form 1099–C is a creditor's required means of satisfying a reporting obligation to the IRS; [and] is [not] required only where an actual discharge has already occurred." **Id.** Therefore, Appellants' argument premised on **Cashion** fails.

We also find Appellants' reliance on **Jones v. Cendant Mort. Corp.**, 396 B.R. 638 (W.D. Pa. 2008), to be unavailing. (**See** Appellants' Brief, at 23-24). In **Jones**, the court considered whether, "because [a mortgagor's] remaining [] obligation to [the mortgagee] is zero under the law of Pennsylvania, his income tax liability to [the] IRS . . . also is zero." **Jones**, **supra** at 645. However, the court's observation that no money remained due on the mortgage was premised on Pennsylvania mortgage law and the mortgagee's failure to file a petition to fix market value, not on its filing of a Form 1099-C. **See id.** at 645. In fact, although the court mentioned the mortgagee's filing of a Form 1099-C, and the mortgagor's allegation that it contained incorrect information, the Form 1099-C did not in any way affect the court's holding. **See id.** at 645-46 (holding that the conclusive
*(Footnote Continued Next Page)*

1(b)(2)(i)(H), (iv); *In re Zilka*, *supra* at 687-88. Further, because all of the claims in Appellants' complaint rely on their erroneous assertion that Appellee cancelled the debt, (*see* Complaint, 8/15/13, at 3-5 ¶¶ 10, 12, 15, 18), we conclude that the trial court properly granted summary judgment in favor of Appellee, and denied Appellants' cross-motion. *See Byoung Suk An*, *supra* at 1287. Appellants' first two issues fail.[11]

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/3/2016

_(Footnote Continued)_ ————————

presumption under Pennsylvania mortgage law that mortgagee had been paid in full was legal fiction that was not binding for federal income tax purposes). We do not find this case persuasive.

[11] Issues three through eight also necessarily fail because they address the individual causes of action, which, as previously stated, rely on the claim that the debt was cancelled. (*See* Appellants' Brief, at 4-5); (*see also* Complaint, 8/15/13, at 3-5 ¶¶ 10, 12, 15, 18). Claim nine does not merit relief because it relies on Appellants' erroneous assertion that the court's decision involved an issue of fact that required it to view the evidence in the light most favorable to them. (*See* Appellants' Brief, at 5, 29-30). However, the motion for summary judgment required the court's determination of the effect of the charge-off and IRS Form 1099-C as a matter of law.