J-A11006-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| T.J.L., | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| V.G.P., | |
| Appellee | No. 3208 EDA 2015 |

Appeal from the Order Entered October 14, 2015
In the Court of Common Pleas of Northampton County
Domestic Relations at No(s): C0048CV2006-3140

BEFORE:  SHOGAN, MUNDY, and FITZGERALD,[*] JJ.

MEMORANDUM BY SHOGAN, J.:                    **FILED JULY 13, 2016**

T.J.L. ("Mother") appeals from the order entered October 14, 2015, that awarded V.G.P. ("Father") continued legal and physical custody of D., the parties' older son born in June of 1999; awarded equal, shared legal and physical custody of E., the parties' younger son born in December of 2007; and awarded Mother primary legal and physical custody of the parties' daughter, K., born in May of 2004.  We affirm.

The trial court judge set forth the factual background of this appeal, as follows:

> This is not an easy family to get a handle on.  The undersigned has had numerous court appearances and three contested non-jury proceedings over the last year.  We have

_____

[*]  Former Justice specially assigned to the Superior Court.

received testimony from all members of this family. A review of this docket demonstrates that the parties are frequent fliers, with many petitions for modification, reconsideration, special relief and contempt in the docket. Further, a close review of the past filings suggests that the parties are very sensitive and quick to conclude injury caused by the other.

Mother and Father were never married but lived together for a significant period, first separating early in 2006, as the first [custody] complaint was filed [by Mother] in April of 2006. Apparently, the parties reconciled briefly—long enough to produce [E.], date of birth December [of] 2007. However, the docket demonstrates that E.'s pending birth did not stop the parties from continuing their courtroom fights.

Currently, [F]ather lives alone, in a single family unit in Pen Argyl. Mother[] lives a few miles away in Wind Gap. The parties are within the same school district. Mother is remarried to [J.]. [J.] has two children by a previous relationship, a boy, [C.], approximately two years older than [E.,] and a girl, [Em.], who is older than [K.]. [K.] and [Em.] are close. [E.] and [C.] are not. Apparently, [C.] does not often come on visits to Mother's home.

The parties['] children are [D.], now 16 . . . [K.,] 13, . . . and [E.], who will [be] 8 in a few months. Based upon the quality of their appearances in [c]ourt, our impression of these children is that each is intellectually gifted, mature, insightful and very emotional.

Order and Statement of Reasons, 10/15/15, at 4-5.

The following procedural history is relevant to an understanding of the present appeal. Following a full custody trial in October 2008, the trial court granted Mother primary physical custody of D., E., and K. ("the Children") on November 14, 2008. On March 16, 2011, Father filed a petition for modification of the custody order entered on November 14, 2008. On May 3, 2011, Mother and Father filed cross petitions for modification and

contempt with regard to the existing November 14, 2008 custody order. On September 2, 2011, the trial court entered a stipulation of the parties as an order of court regarding custody. The stipulation was modified on February 11, 2013. Under the modified order, the parties had shared legal custody of the Children; Father had primary physical custody of D., and Mother had primary physical custody of K. and E., with Father having partial physical custody of them.

On February 11, 2014, Mother filed a petition to modify the existing custody order. Mother asserted that Father suffered from unmanaged mental health issues due to his inability to control his anger and his continued erratic behavior. Mother also asserted that K. preferred not to visit with Father due to his erratic and anger-infused behavior. Mother alleged that Father refused to behave in a mature manner and had an inability to control his temper, and that it would be in the best interest of K. and E. to reduce Father's periods of partial physical custody with those children, and to provide him only limited periods of supervised visitation. Mother also sought sole legal custody of K. and E.

The trial court held a hearing on the petition on July 14, 2014, and July 15, 2014. On July 16, 2014, Northampton County Common Pleas President Judge Stephen G. Baratta entered an order dated July 15, 2014, that denied Mother's petition for modification, and directed that primary custody of K. and E. would remain with Mother, and that Father's periods of

partial custody would remain as set forth in the stipulation dated September 2, 2011. D. was to remain in Father's primary physical custody, with partial custody/visitation between Mother and D. to be as they agreed. The trial court further directed that Mother and Father would continue to share legal custody of K. and E., and, implicitly provided that Father would have sole legal custody of D. Moreover, the trial court directed that Father and K. were to participate in family therapy, with sessions to continue as long as the therapist deems such sessions to be productive and appropriate. Mother and D. were directed to participate in three sessions of family therapy together, with the sessions to continue thereafter upon D.'s consent.

On January 13, 2015, the trial court, by President Judge Baratta, directed that the existing custody order with regard to Father and D. and E. would remain unchanged; however, Father's periods of partial physical custody of K. were reduced to allow her paternal grandparents to supervise Father's partial physical custody on weekends in light of the deterioration of the relationship between K. and Father. The trial court instructed Father to engage in family therapy with Kathleen Coughlin LSW and Associates, and made Father responsible for locating, arranging for, and paying for the therapy. The trial court stated that, depending upon the progression of the counseling, Father's partial physical custody of K. could be returned to the status quo established by the September 2, 2011 stipulation, either by agreement of the parties or further order of court.

On January 30, 2015, Mother filed a petition for special relief in which she complained that Kathleen Coughlin LSW and Associates was the therapist. Mother asserted that engaging in therapy with that provider would require K. to miss too much school time, and Mother asked the trial court to order Father to seek other options for a therapist. On February 5, 2015, the trial court entered, as an order, a stipulation of the parties dated February 4, 2015, that addressed K.'s visits with Father and Father's parents.

On August 13, 2015, Father filed a petition for modification and contempt of custody requesting, *inter alia*, shared physical custody of E. and K. Before Father's petition could be heard, Mother brought a petition for special relief on September 8, 2015, seeking an immediate suspension of Father's partial custody due to Father's alleged use of inhalants[1] while driving with the Children. That matter was heard in motions court, *ex parte*, by a different judge, who was presiding in motions court that day. Seemingly due to the emergent nature of the allegations, the motions' judge entered an order on September 8, 2015, for supervised visits for Father, even though neither Father nor his counsel were present, and Father had not received the usual required notice.

---

[1] The specific allegation was that the Children "have recently reported to Mother that during Father's periods of partial custody he has been using inhalants in their presence, specifically permanent markers." Petition for Special Relief, 9/8/15, at ¶ 5.

On September 18, 2015, the custody court entertained Father's August 13, 2015 petition. The trial court placed it on the nonjury trial list for October 5, 2015. At the same time, the trial court vacated the order of September 8, 2015, on the record; however, this order apparently never was transcribed or filed. Mother subsequently filed an answer to Father's petition for modification and for contempt, with a counter-petition reasserting the allegations from the petition for special relief, and sought a reduction in Father's partial custody, a drug and alcohol evaluation, and designation of vacation weeks for the parties.

At the October 5, 2015 hearing, K. and E. testified, as did both parties, Stepfather, Patti Saunders, a therapist for Valley Youth House who conducted court-ordered therapy for Father and K., [H.D.], the maternal grandmother ("Grandmother"), and [S.S.], the maternal grandmother's caregiver ("Caregiver").

In an order dated October 14, 2015, the trial court vacated the September 8, 2015 emergency order entered by Judge Giordano. In the accompanying Statement of Reasons to that order, the trial court set forth findings of fact based on the testimony at the October 5, 2015 hearing, which we find are supported by the record, and we incorporate herein. Order and Statement of Reasons, 10/14/15, at 4–13. Importantly, the trial court found the following from the testimony:

> Interestingly, [J.] has two children of his own, a girl close to [K.'s] age and a boy near [E.'s] age. [J.] testified that his son

does not often attend his visits in their home partially because of [E.] and partially because of his ex-wife. However, [J.'s] daughter does visit and has a close relationship with [K.]

It is clear from the testimony of Mother and [J.] that [E.] is having horrible, out-of-control emotional breakdowns in Mother's home. We were struck by the fact that E. does not misbehave in school. His only disability in school is his lack of social interaction and selective mutism, which Mother indicates has been getting better. There was also no testimony about [E.] having out-of-control tantrums in Father's house.

Last year, Mother had us convinced that the primary problem was Father's anger directed toward Mother, including that he was rude, verbally combative and used curse words when addressing her during custody exchanges. Mother also claimed that Father allegedly criticized Mother when the [C]hildren were at Father's house. This year, we are not sure that our assessment that Father was the sole aggressor was wholly accurate.

S.S. . . . and [Grandmother] also testified. They were both critical of Father, relaying their impressions that he is loud, rude and aggressive.

Order and Statement of Reasons, 10/14/15, at 13. The trial court further directed that Father shall have continued legal and physical custody of D. and encouraged Mother to consider re-instituting reasonable contact and/or to recommence reunification counseling. The trial court directed that the parties share legal and physical custody of E. on a week-on, week-off basis. The trial court also expanded Father's physical custody of E. Finally, the trial court directed that the parties share legal custody of K., with primary physical custody remaining with Mother.

Specifically regarding E., the October 14, 2015 order provided, in pertinent part, as follows:

- 7 -

3. . . . There shall be no interaction or communication between Mother and Father (or between either party and the adult representative of the other party providing transportation of [E.]), absent mutual agreement. In other words, Father shall remain in his home and/or not approach Mother or the adult transporting [E.]. Likewise, when Father relinquishes custody . . ., he shall deliver [E.] to Mother's home and permit [E.] to enter Mother's home without escort.

These parties have demonstrated that they cannot act civilly to each other, therefore, in an effort to reduce potential conflict, we are barring Father and Mother (her husband) from interacting during custody exchanges. [E.] is old enough to walk into the respective home on his own during these custody exchanges.

4. . . . Mother or her adult representative shall deliver [K.] and [E.] for Father's Friday custodial period.

* * *

5. We understand the parties' financial resources are limited; thus, further treatment recommendations are not a [c]ourt directive.

Because of the significant dysfunction regarding the parties and [C]hildren[,] we have recommended that [D.] and Mother participate in reunification counseling. We also recommend that Father and [K.] seek out a new provider who will be willing to continue the work of Valley Youth House related to strengthening the bond between Father and [K]. Further, given [E.'s] history of emotional outbreaks and temper tantrums, we recommend that the parties attempt to locate a third party provider that can provide both emotional support for [E.] and co-parenting support services to the parties, so that the parties can better manage [E.'s] outbursts. We would also encourage any third party provider to consult with the school district providers, to assure continuity with a holistic treatment program.

Order and Statement of Reasons, 10/14/15, at 1–3.

In the October 14, 2015 final custody order, the trial court indicated

that it was addressing Father's petition for contempt and to modify custody

- 8 -

filed on August 13, 2015.[2]   On October 20, 2015, Mother filed a motion to stay the trial court's October 14, 2015 order.  On October 21, 2015, Mother timely filed a notice of appeal and a concise statement pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b).  On October 28, 2015, the trial court denied Mother's motion for stay.

On appeal, Mother raises the following two issues:

1. Did the court deny [Mother] due process by, sua sponte, placing the primary custody of the minor child [E.,] at issue, where neither party petitioned the court for a change in primary custody?

2. Did the trial court err by granting Father shared custody of the minor child, [E.], where the record failed to support this conclusion?

Mother's Brief at 23 (full capitalization omitted).

In custody cases, our standard of review is as follows:

In reviewing a custody order, our scope is of the broadest type and our standard is abuse of discretion.  We must accept findings of the trial court that are supported by competent evidence of record, as our role does not include making independent factual determinations.  In addition, with regard to issues of credibility and weight of the evidence, we must defer to the presiding trial judge who viewed and assessed the witnesses first-hand. However, we are not bound by the trial court's deductions or inferences from its factual findings.  Ultimately, the test is whether the trial court's conclusions are unreasonable as shown by the evidence of record.  We may reject the conclusions of the trial court only if they involve an error of law, or are unreasonable in light of the sustainable findings of the trial court.

_____

[2]   The trial court made no actual finding regarding Father's contempt allegations, and Mother advances no argument in this regard.

*C.R.F., III v. S.E.F.*, 45 A.3d 441, 443 (Pa. Super. 2012) (citation omitted).

We have stated that:

> the discretion that a trial court employs in custody matters should be accorded the utmost respect, given the special nature of the proceeding and the lasting impact the result will have on the lives of the parties concerned. Indeed, the knowledge gained by a trial court in observing witnesses in a custody proceeding cannot adequately be imparted to an appellate court by a printed record.

*R.L.P. v. R.F.M.*, 110 A.3d 201, 207–208 (Pa. Super. 2015) (quoting *Ketterer v. Seifert*, 902 A.2d 533, 540 (Pa. Super. 2006)).

When deciding a petition to modify custody, the court must conduct a thorough analysis of the best interests of the child based on the factors delineated in the Child Custody Act ("the Act"), 23 Pa.C.S. § 5328(a). *E.D. v. M.P.*, 33 A.3d 73, 80 (Pa. Super. 2011). "All of the factors listed in section 5328(a) are required to be considered by the trial court when entering a custody order." *A.V. v. S.T.*, 87 A.3d 818, 823 (Pa. Super. 2014).

With any custody case decided under the Act, the paramount concern is the best interests of the child. *See* 23 Pa.C.S. §§ 5328, 5338. Section 5338 of the Act provides that, upon petition, a trial court may modify a custody order if it serves the best interests of the child. 23 Pa.C.S. § 5338. Section 5328(a) of the Act sets forth the best interest factors that the trial court must consider. 23 Pa.C.S. § 5328(a); *E.D. v. M.P.*, 33 A.3d 73, 80–81 n.2 (Pa. Super. 2011).

Section 5323 of the Act provides for the following types of awards:

**(a) Types of award.**—After considering the factors set forth in section 5328 (relating to factors to consider when awarding custody), the court may award any of the following types of custody if it in the best interest of the child:

(1) Shared physical custody.

(2) Primary physical custody.

(3) Partial physical custody.

(4) Sole physical custody.

(5) Supervised physical custody.

(6) Shared legal custody.

(7) Sole legal custody.

23 Pa.C.S. § 5323. Section 5323(d) provides that the court shall delineate the reasons for its decision on the record in open court or in a written opinion or order. 23 Pa.C.S. § 5323(d).

Despite Mother's presentation of two issues in her statement of questions, she addresses them as a single issue in her brief in contravention of Pa.R.A.P. 2119(a) in that "[t]he argument [is not] divided into as many parts as there are questions to be argued . . . ." ***Verdini v. First Nat. Bank of Pennsylvania***, 135 A.3d 616, 618 n.2 (Pa. Super. 2016). Because we can discern Mother's arguments, we need not deem the claims waived for the non-compliance with the briefing requirements, ***id***., and we likewise can address the issues as a whole.

- 11 -

Relying on *P.H.D. v R.R.D.*, 56 A.3d 702 (Pa. Super. 2012), Mother asserts that the trial court erred in transferring primary physical custody of E. to Father, contending that there was no petition for modification before the court. Mother's Brief at 27. Mother argues the court violated her due process rights to notice and an opportunity to be heard, claiming that if she had been made aware that the primary physical custody of E. was at issue, she would have been prepared to present additional witnesses, including therapists, teachers, and health care providers. *Id*. at 28. Mother also argues the trial court erred in permitting hearsay testimony when Father was permitted to testify, over objection, regarding the magic-marker-sniffing incident that he took a drug test, and it was negative. *Id*. Lastly, she contends the record does not support the trial court's grant of shared physical custody of E. *Id*. at 29. In this regard, Mother asserts that the trial court erred in concluding that:

1. Neither party is more likely to encourage contact with the other parent;

2. Father is not a risk to the children;

3. Father provides more stability for E.;

4. E. desired to live with Father;

5. Neither party has a superior claim to custody;

6. Father is more likely to maintain a loving, stable home;

7. Father is more likely to attend to E.'s needs;

8. Neither party has a history of drug or alcohol abuse.

Mother's Brief at 29–39.

We first examine Mother's contention that the trial court erred in altering physical custody of E. from primary custody in Mother to shared custody by both parties. In *Langendorfer v. Spearman*, 797 A.2d 303 (Pa. Super. 2002), this Court held that a trial court may not modify a custody order as a sanction for contempt of such an order unless a petition to modify custody has been filed and all parties have been provided with notice and opportunity to prepare and advocate their respective positions. In *Langendorfer*, the trial court ruled upon a mother's petition for contempt by finding the father in contempt, and it modifed the parties' custody order as a sanction against the father. The mother had not requested a custody modification, and the father received no notice.

In *P.H.D.*, this Court expanded on *Langendorfer*. The trial court in *P.H.D.* dismissed a mother's contempt petition but "clarified" the parties' custody order. In altering the parties' custody order, the trial court stated that it was "modifying the custody order to clarify it." *P.H.D*., 56 A.3d at 704. On appeal, this Court afforded the father relief and concluded that his due process rights were violated.

More recently in *G.A. v. D.L.*, 72 A.3d 264 (Pa. Super. 2013), this Court stated:

> We find the case before us analogous to *Langendorfer* and *P.H.D.* Here, the trial court modified custody by reinstating a previous order notwithstanding the fact that no petition for custody modification was before the court. In his petition for

contempt, Father asked the trial court for two specific forms of relief: payment of his attorney fees, and Mother's compliance with the August 7, 2012 order. Mother was not on notice that custody was at issue, and she had no opportunity to prepare a case opposing a change in custody. The trial court abused its discretion when it modified custody by reinstating its custody order of March 8, 2011, notwithstanding the fact that neither party had presented a petition for custody modification.

*Id*. at 270.

Thus, Pennsylvania law makes clear that a court may not permanently modify a custody order in the context of a contempt proceeding without having a petition for modification before it. *Langendorfer*, 797 A.2d at 309. This requirement ensures that a party subject to civil contempt adjudication involving a custody order receives proper notice that custody will be at issue in the contempt proceedings. *Id*. This Court has stated:

> Formal notice and an opportunity to be heard are fundamental components of due process when a person may be deprived in a legal proceeding of a liberty interest, such as physical freedom, or a parent's custody of her child. Both notice and an opportunity to be heard must be afforded at a meaningful time in a meaningful manner.

*Everett v. Parker*, 889 A.2d 578, 580 (Pa. Super. 2005). As previous panels of this Court have explained: "Notice, in our adversarial process, ensures that each party is provided adequate opportunity to prepare and thereafter properly advocate its position, ultimately exposing all relevant factors from which the finder of fact may make an informed judgment." *Langendorfer*, 797 A.2d at 309 (quoting *Choplosky v. Choplosky*, 584 A.2d 340, 342 (Pa. Super. 1990)).

- 14 -

The instant case poses a unique scenario. Father filed a combined modification and contempt petition. The trial court did not make a specific finding regarding contempt, but Mother does not raise that as an issue. In seeking modification of custody, Father sought legal custody of E. and physical custody of K.

We look to the trial court's explanation, which was as follows:

> The [c]ourt is well aware that a parent's right to child custody is constitutionally protected as a fundamental liberty under the XIV Amendment to the United States Constitution. We are also well aware that there is a history of Supreme Court and Superior Court cases requiring the filing of appropriate pleadings seeking to bring about a change in a custody order (generally through a Petition for Modification), so that the parties are on notice as to the adversarial proceeding related to modifying custody. Specifically, the Superior Court recognized in Sager v. Sager, 377 Pa. Super. 391, 547 A.2d 424 (Pa. Super. 1988), the legal standard related to this issue. In fact, the Superior Court referenced Karis v. Karis, 518 Pa. 601, 544 A.2d 1328 (1988), where the Supreme Court set forth the current legal standard: "The requirement established by the Supreme Court is that the Petition must simply allege it is in the best interest of the children to warrant review. The requirement that a Petition for Modification be filed in order for the [c]ourt to review the case for a permanent modification of a custody order and to enter a final order remains intact." Id. at 426 n.1.; See also Choplosky v. Choplosky, 584 A.2d 340, 342 (Pa. Super. 1990).

> Here, Appellant claims that we "erred in changing custody of minor child without sufficient notice to Appellant that custody of this child was at issue."

> This complaint is disingenuous and ignores the very pleadings filed by Mother in this matter. By way of background, this matter came to us on the Non-Jury Trial List as a result of Father's "Petition for Modification/Contempt of Custody Order" filed on August 13, 2015, which contained a prayer for relief

- 15 -

which asked for modification of the Custody Order and a finding of contempt against Mother.

Thereafter, Mother, Appellant, filed her own Petition for Contempt of the Custody Order on September 4, 2014. Mother then filed a second pleading dated September 8, 2015, titled "Petition for Special Relief" in which she requested that all visitations between Father and minor children, [E. and K.], be court supervised. However, Mother was not finished filing pleadings against Father. On October 2, 2015, Mother filed both an Answer to Father's pleading and her own "Counter-Petition for Modification of Custody" seeking to further limit Father's partial custody with regard to minor children, [E. and K.]. Thus, Mother filed two separate actions seeking to modify the permanent Custody Order, **both of which specifically requested the [c]ourt to review [E.'s] custodial situation**. In addition, Father had filed his own petition to modify custody.

Clearly, given the flurry of pleadings filed by the parties specifically requesting modification of the existing custody orders, we were vested with jurisdiction to modify the existing custodial orders.

This is not only a hollow claim but, also a blatant misrepresentation of the record created by Appellant/Mother.

Pa.R.A.P. 1925(a) Statement, 10/28/15, at 1–3 (emphasis added).

Unlike the situation in *P.H.D.*, Mother herein was aware that both modification and contempt of custody were before the trial court. She had notice that modification of the existing custody order, which had changed as a result of her special petition, and contempt of the existing custody order were at issue. There clearly was a modification of custody request before the trial court regarding both E. and K. Thus, we conclude that Mother's reliance on *P.H.D.* is misplaced, and we find no denial of due process on the basis that Mother was not afforded notice of nature of the proceeding.

Mother also contends that her due process rights were violated when the trial court permitted hearsay testimony regarding the allegation that Father engaged in drug-related behavior concerning inhalants. She maintains the trial court erroneously permitted Father to testify, over objection, that he took a drug test that ultimately was negative. Mother's Brief at 28, 40.

Mother failed to raise the issue in her statement of questions in her brief on appeal. Thus, the contention is waived. **Koller Concrete, Inc. v. Tube City IMS, LLC**, 115 A.3d 312, 320 n.9 (Pa. Super. 2015) (citing **Cobbs v. SEPTA**, 985 A.2d 249, 256 (Pa. Super. 2009) (holding that issue not explicitly raised in an appellant's statement of the questions involved is waived); Pa.R.A.P. 2116(a) ("No question will be considered unless it is stated in the statement of questions involved or is fairly suggested thereby.")). Additionally, Mother waived the issue by her failure to support it with legal argument and citation to case law. "The Rules of Appellate Procedure state unequivocally that each question an appellant raises is to be supported by discussion and analysis of pertinent authority." **Estate of Haiko v. McGinley**, 799 A.2d 155, 161 (Pa. Super. 2002); Pa.R.A.P. 2119(b). "Appellate arguments which fail to adhere to these rules may be considered waived, and arguments which are not appropriately developed are waived. Arguments not appropriately developed include those where the party has failed to cite any authority in support of a contention." **Lackner**

*v. Glosser*, 892 A.2d 21, 29-30 (Pa. Super. 2006) (citations omitted).  This Court will not act as counsel and will not develop arguments on behalf of an appellant.  ***Irwin Union National Bank and Trust Company v. Famous and Famous and ATL Ventures***, 4 A.3d 1099, 1103 (Pa. Super. 2010)).

Mother also contends that the trial court erred in granting shared physical custody of E. to Father where the record does not support this finding, and it is contrary to E.'s best interest.  Mother's Brief at 26, 40. Mother avers that a consideration of the best interest factors does not justify such an outcome.  ***Id***. at 40.

Section 5328(a) of the Act provides as follows:

**§ 5328.  Factors to consider when awarding custody**

**(a) Factors.—**In ordering any form of custody, the court shall determine the best interest of the child by considering all relevant factors, giving weighted consideration to those factors which affect the safety of the child, including the following:

> (1) Which party is more likely to encourage and permit frequent and continuing contact between the child and another party.
>
> (2) The present and past abuse committed by a party or member of the party's household, whether there is a continued risk of harm to the child or an abused party and which party can better provide adequate physical safeguards and supervision of the child.
>
> (2.1) The information set forth in section 5329.1(a)(1) and (2) (relating to consideration of child abuse and involvement with protective services).

(3) The parental duties performed by each party on behalf of the child.

(4) The need for stability and continuity in the child's education, family life and community life.

(5) The availability of extended family.

(6) The child's sibling relationships.

(7) The well-reasoned preference of the child, based on the child's maturity and judgment.

(8) The attempts of a parent to turn the child against the other parent, except in cases of domestic violence where reasonable safety measures are necessary to protect the child from harm.

(9) Which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the child adequate for the child's emotional needs.

(10) Which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the child.

(11) The proximity of the residences of the parties.

(12) Each party's availability to care for the child or ability to make appropriate child-care arrangements.

(13) The level of conflict between the parties and the willingness and ability of the parties to cooperate with one another. A party's effort to protect a child from abuse by another party is not evidence of unwillingness or inability to cooperate with that party.

(14) The history of drug or alcohol abuse of a party or member of a party's household.

(15) The mental and physical condition of a party or member of a party's household.

(16) Any other relevant factor.

23 Pa.C.S. § 5328.

All of the factors listed in 23 Pa.C.S. § 5328 must be considered by the trial court when entering a custody order. ***J.R.M. v. J.E.A.***, 33 A.3d 647, 652 (Pa. Super. 2011). In ***A.V.***, 87 A.3d 818, this Court explained:

> The record must be clear on appeal that the trial court considered all the factors. [***J.R.M. v. J.E.A.***, 33 A.3d 647, 652 (Pa. Super. 2011)].
>
> Section 5323(d) provides that a trial court "shall delineate the reasons for its decision on the record or in open court or in a written opinion or order." 23 Pa.C.S.A. 5323(d). Additionally, "section 5323(d) requires the trial court to set forth its mandatory assessment of the sixteen [Section 5328 custody] factors prior to the deadline by which a litigant must file a notice of appeal." ***C.B. v. J.B.***, 65 A.3d 946, 955 (Pa. Super. 2013), *appeal denied*, 70 A.3d 808 (2013). Section 5323(d) applies to cases involving custody and relocation. ***A.M.S. v. M.R.C.***, 70 A.3d 830, 835 (Pa. Super. 2013).
>
> In expressing the reasons for its decision, "there is no required amount of detail for the trial court's explanation; all that is required is that the enumerated factors are considered and that the custody decision is based on those considerations." ***M.J.M. v. M.L.G.***, 63 A.3d 331, 336 (Pa. Super. 2013), *appeal denied*, 68 A.3d 909 (2013). A court's explanation of reasons for its decision, which adequately addresses the relevant factors, complies with Section 5323(d). ***Id***.

***Id***. at 822–823.

The only factor for which Mother provides a citation to case law is factor thirteen: The level of conflict between the parties and the willingness and ability of the parties to cooperate with one another. Mother relies on ***Wiseman v. Wall***, 718 A.2d 844 (Pa. Super. 1998), and asserts that the

- 20 -

trial court abused its discretion by awarding shared custody of E. where it acknowledged that there is a high level of conflict between the parties. Mother's Brief at 37. She maintains that because the parties are incapable of cooperation, shared custody is not appropriate in this case. *Id*. at 40. We disagree.

Prior to the enactment of the Act, shared custody in Pennsylvania was governed by 23 Pa.C.S. § 5304, which provided as follows:

**§ 5304. Award of shared custody**

An order for shared custody may be awarded by the court when it is in the best interest of the child:

(1) upon application of one or both parents;

(2) when the parties have agreed to an award of shared custody; or

(3) in the discretion of the court.

23 Pa.C.S. § 5304.[3]

In *Wiseman*, a panel of this Court listed factors that the trial court is required to consider in awarding shared custody, as follows:

(1) both parents must be fit, capable of making reasonable child rearing decisions and willing and able to provide love and care for their children; (2) both parents must evidence a continuing desire for active involvement in the child's life; (3) both parents must be recognized by the child as a source of security and love; and (4) a minimal degree of cooperation between the parents must be possible.

---

[3] This section was repealed effective January 24, 2011.

*Wiseman*, 718 A.2d at 848; *see also In re Wesley J.K.*, 445 A.2d 1243,

1248–1249 (Pa. Super. 1982). We explained in *Wesley J.K.*:

> A minimal degree of cooperation does not translate into a requirement that the parents have an amicable relationship. Although such a positive relationship is preferable, a successful joint custody arrangement requires only that the parents be able to isolate their personal conflicts from their roles as parents and that the children be spared whatever resentments and rancor the parents may harbor.

*Id.* at 1249 (citation omitted).

In *B.C.S. v. J.A.S.*, 994 A.2d 600 (Pa. Super. 2010), a panel of this

Court found that the trial court had misapprehended the law in construing

*Wesley J.K.* as mandating an amicable relationship between the parents as

a prerequisite for shared custody. Based upon a finding that the trial court

had misapprehended the law by imposing a heightened standard, we

concluded in *B.C.S.* that the trial court abused its discretion.

In the instant case, with regard to best-interest factor thirteen, the

trial court determined, "Unfortunately, these parties have not demonstrated

an ability to cooperate with one another. As a result, there is little likelihood

that the tension between the homes will be remediated in the near future."

Order and Statement of Reasons, 10/14/15, at 18. Although the trial court

found the parties have shown an inability to cooperate at times and that

there is little likelihood that the tension between the homes will be

remediated in the near future, the trial court did not find that the minimal

degree of cooperation for shared custody was lacking. We remind Mother

that a **minimal** degree of cooperation between the parties is essential. *Johnson v. Lewis*, 870 A.2d 368 (Pa. Super. 2006). Communication is merely one aspect of the parties' ability to cooperate. Obviously, the trial court considered the fact that the parties have not embraced the shared custody situation with regard to E., but it found that shared custody was in the best interest of E. We remind the parties that they must "isolate their personal conflicts from their roles as parents and that the children be spared whatever resentments and rancor the parents may harbor." *In re Wesley J.K.*, 445 A.2d at 1249.

Mother appears to be requesting this Court to make new findings or re-weigh the evidence. We decline to do so. The trial court's conclusions, in light of the trial court's sustainable findings on each of the custody best-interest factors, are not unreasonable, nor did the trial court commit an error of law. *C.R.F. v. S.E.F.*, 45 A.3d 441, 443 (Pa. Super. 2012). This Court must "accept findings of the trial court that are supported by competent evidence of record, as our role does not include making independent factual determinations." *Id*. (quoting *A.D. v. M.A.B.*, 989 A.2d 32, 35–36 (Pa. Super. 2010)). Thus, we reject this claim.

After careful review of the record in this matter, we find no merit to Mother's arguments. Therefore, we affirm the trial court's custody order.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/13/2016