2025 IL App (1st) 240834-U

No. 1-24-0834

Order filed October 16, 2025

Fourth Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| 832 OAKDALE CONDOMINIUM ASSOCIATION, an Illinois not-for-profit corporation, | ) ) ) | Appeal from the Circuit Court of Cook County |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 21 M1 702851 |
| BRIDGET McBRIDE and ALL UNKNOWN OCCUPANTS, | ) ) ) | |
| Defendants, | ) ) | Honorable Martin Paul Moltz, |
| (Bridget McBride, Defendant-Appellant). | ) | Judge Presiding. |

_____

PRESIDING JUSTICE NAVARRO delivered the judgment of the court.
Justices Lyle and Quish concurred in the judgment.

**ORDER**

¶ 1    *Held*:  In this condominium eviction case, we affirm the trial court's judgment and its challenged orders where, for the majority of the defendant's claimed errors, the record on appeal is insufficient for our review and where the record is sufficient, the court did not err.

¶ 2    Plaintiff, 832 Oakdale Condominium Association (Oakdale), filed an eviction action against defendant, Bridget McBride, one of its unit owners, claiming that she failed to pay her proportionate share of the association's common expenses, including payments toward a special assessment. In response, McBride raised two counterclaims, including one challenging the legality of the special assessment. On Oakdale's motion, the trial court struck both counterclaims. The case proceeded to trial, where the court found in favor of Oakdale, awarding it $24,434.75 and possession of McBride's condominium unit. McBride now appeals and contends that: (1) the court erred in striking her counterclaims; (2) the court abused its discretion when it limited her ability to present her case at trial; (3) the court's judgment following trial was against the manifest weight of the evidence; (4) the court erred by refusing to consider her mid-trial motion to dismiss; and (5) the court erred by refusing to transfer her motion for substitution of judge for cause to another judge for consideration. For the reasons that follow, we affirm.

¶ 3                                    I. BACKGROUND

¶ 4    Oakdale is a common-interest community association, otherwise known as a condominium association, located at 832 West Oakdale Avenue in Chicago. McBride was the legal owner of a unit within that association. Pursuant to Oakdale's declarations and the Condominium Property Act (Act) (765 ILCS 605/1 *et seq.* (West 2020)), McBride was obligated to pay her proportionate share of the association's common expenses.

¶ 5    In 2010, Oakdale filed an eviction action against McBride seeking possession of her unit and to recover amounts owed to the association. During a trial, the trial court dismissed the case without prejudice because the association's board of managers did not vote to authorize the litigation against McBride at an open meeting. Oakdale appealed, and this court dismissed the appeal for lack of jurisdiction. *832 Oakdale Condominium Ass'n v. McBride*, 2017 IL App (1st)

151528-U. As a result of the litigation with McBride, Oakdale incurred significant legal fees. In January 2019, Oakdale's board of managers voted to pass a resolution authorizing the levy of a $90,000 special assessment to pay for those legal fees. No unit owners filed a petition challenging the special assessment in accordance with the Act (see 765 ILCS 605/18(a)(8) (West 2020)).

¶ 6    In August 2021, believing that McBride had again failed to pay her proportionate share of the association's common expenses, Oakdale filed a two-count eviction action against her. Count I sought possession of McBride's unit based on her failure to pay the amounts owed. Count II alleged a breach of Oakdale's declarations for her failure to pay the amounts owed. In both counts, Oakdale sought over $6,000 from McBride, including $4,831.37 for the common expenses owed. Oakdale also sought attorney fees and court costs.

¶ 7    McBride filed an answer, denying that she owed the amounts claimed by Oakdale, and raised several affirmative defenses. In her fourth affirmative defense, McBride claimed that the special assessment was illegal because multiple managers of Oakdale's board of managers had a conflict of interest in voting to levy the special assessment. After being granted leave by the trial court, McBride also filed two counterclaims. Her first counterclaim was a breach of fiduciary duty claim also challenging the legality of the special assessment adopted by Oakdale's board of managers. According to McBride, three payments toward the special assessment were among the alleged expenses owed by her in the eviction action. McBride posited that, because the initial lawsuit against her was dismissed and never re-filed, the board of managers could be held personally liable to reimburse Oakdale for funds taken without legal authority. In turn, according to McBride, because multiple managers of Oakdale's board of managers were responsible for the illegal first lawsuit against her, they had a conflict of interest in voting to levy the special assessment, resulting in their votes not counting and the special assessment not receiving the

required majority vote. McBride asserted that, despite missing 3 payments toward the special assessment, she had made 33 payments toward it in protest, which totaled $3,599.64. In addition to challenging the legality of the special assessment, McBride sought reimbursement for the 33 payments already made toward the special assessment. In McBride's second counterclaim, she alleged that Oakdale violated section 19(b) of the Act (*id.* § 19(b)), which allows any unit owner the right to inspect and examine the association's books and records, by failing to comply with 30 written requests to access its records.

¶ 8     Oakdale moved to strike McBride's counterclaims, contending that her first counterclaim was duplicative of her previously-filed fourth affirmative defense and both were not standalone claims. In January 2023, following a hearing and argument, the trial court granted Oakdale's motion to strike. In the court's written order, it did not provide an explanation for granting Oakdale's motion, but noted it had rendered its ruling on the record. However, there is no transcript of that hearing included with the record on appeal.

¶ 9     The following month, McBride filed a motion to reconsider the trial court's order. She asserted that the court struck her counterclaims because, although her counterclaims "may be germane" to the eviction matter, eviction courts were "clogged up" due to the COVID-19 pandemic, resulting in her counterclaims "belong[ing] in another court." In turn, McBride argued that her counterclaims were completely germane to the issue of possession because the court could not fully resolve the eviction action against her without determining whether the special assessment was lawfully levied. McBride also insinuated that the court struck her counterclaims based on a newly-enacted policy from the First Municipal District of the circuit court of Cook County. In March 2023, the trial court orally denied the motion, though there is no transcript of that ruling in the record on appeal.

¶ 10    On April 5, 2023, McBride's attorney attended a virtual meeting of the First Municipal Advisory Committee moderated by the presiding judge of the First Municipal District. McBride's attorney asked if there was a policy in the First Municipal District to refer germane issues to other courts and only consider true issues of possession. According to McBride's attorney, the presiding judge of the First Municipal District denied that there was such a policy.

¶ 11    Two days later, McBride filed a "Motion for Hearing," highlighting the presiding judge of the First Municipal District's response and requesting a hearing to address the inconsistency as well as to obtain the trial court's reason for striking her counterclaims in writing. Additionally, because there had been no order in the record denying her motion to reconsider, McBride requested the court issue one and authorize her to file an interlocutory appeal. According to the "Case Summary," there was a status hearing the following week, but there is no transcript from that hearing in the record. The case was set for trial on April 28, 2023. The day before trial, McBride filed a "Motion for Substitution of Judge for Cause," arguing that she could not receive a fair trial before the court principally because its claim about a policy in eviction cases had been contradicted by the presiding judge of the First Municipal District.

¶ 12    The next day, the trial began with Oakdale's only witness, Bradley Arlen, its treasurer. As will be discussed later in this order, although a copy of the transcript from this day of the trial is included in the appendix of Oakdale's brief, it is not a part of the record on appeal and we cannot consider it. Following Arlen's direct examination, the trial court entered a written order denying "[a]ll pending" motions of McBride's, which included her motion for substitution of judge, without explanation. The court continued the trial for two weeks and reiterated a ruling that had been "stated on the record that" all questions must be "germane to the issue of possession." Then, on its own motion, the court limited the remaining questioning by the parties, including McBride's

attorney to 10 cross-examination questions of Arlen and 10 direct examination questions of McBride.

¶ 13    Before the trial continued, McBride filed a "Motion to Dismiss," which she then amended. In the amended motion, McBride contended that Oakdale violated provisions of the Act by failing to vote to authorize the litigation against her at an open meeting and failing to provide the requisite notice of a meeting of the board of managers. McBride argued that Oakdale's noncompliance was established through Arlen's testimony and two exhibits introduced during his testimony—minutes of the board of managers' January 2015 and April 2019 meetings—that she attached to the amended motion. The trial court apparently struck the amended motion before the trial resumed.

¶ 14    The trial continued on May 12, 2023. As will be discussed later in this order, although a copy of the transcript from this day of the trial was included as an exhibit to McBride's posttrial motion, it is not properly part of the record on appeal, and we cannot consider it. Following the testimony of McBride and closing arguments, the trial court entered an eviction order, awarding possession of her condominium unit to Oakdale and ordering her to vacate the unit within 180 days. The court also awarded Oakdale $24,434.75, which, according to the court's written order, "reflect[ed] common expenses and attorneys fees [*sic*] awarded and is reflective of the $5[,]000 reduction in the court's ruling. Total judgment also reflects $2,092.75 in court costs." The court's order did not indicate what portion of the $5,000 reduction was for common expenses compared to attorney fees. At some point during the proceedings, McBride had moved out of her unit and began leasing it. Later that month, the association directed McBride's tenant to pay all rent to Oakdale beginning in June 2023.

¶ 15    On June 12, 2023, McBride filed a timely posttrial motion, asking the trial court to reconsider its striking of her counterclaims and amended motion to dismiss, its denial of her motion

for substitution of judge for cause, and its judgment following trial. As to the latter argument, McBride posited that the court should have credited her with approximately $6,000 in payments made yet not counted by Oakdale, which would have resulted in her having a surplus in her account rather than being delinquent, and thus, not entitling Oakdale to any attorney fees and costs. Lastly, McBride sought to have the court stay Oakdale's ability to collect rent from her tenant so that she could continue to directly receive those rent payments. Over the next three months, McBride's tenant paid rent directly to Oakdale.

¶ 16    On September 7, 2023, the trial court entered a written order denying the majority of McBride's posttrial motion, but precluded Oakdale from collecting any additional rent from McBride's tenant. As for the rent already collected by Oakdale for June, July and August 2023, the court reserved ruling on how that money should be handled, either applied to the trial judgment or returned directly to McBride. Three months later, McBride filed an emergency motion for clarification of the court's September order. In response, the court asserted that the only issue remaining concerned the rent payments. To this end, it ordered briefing on the issue and denied a request by McBride to file "an interlocutory appeal."

¶ 17    Thereafter, McBride filed a motion for an extension of time to file her memorandum on the rent issue. The court denied McBride an extension. Oakdale subsequently filed its memorandum, arguing that the rent payments made by McBride's tenant to Oakdale should simply be applied to offset the amount owed by McBride following trial rather than returned directly to her. McBride did not file a memorandum. Instead, she filed a motion to continue the hearing and then, an emergency motion for substitution of judge for cause. On March 15, 2024, the trial court entered a written order, denying McBride's motions, ruled that Oakdale was entitled to keep the rent from McBride's tenant and ordered that amount to offset the amount owed by McBride

following trial. The court also ordered that there was no longer any stay of enforcement of the money judgment or the possession provision of the eviction order. McBride subsequently filed her notice of appeal.

¶ 18                                    II. ANALYSIS

¶ 19                                   A. Jurisdiction

¶ 20     Before addressing the merits of McBride's appeal, we must first address our jurisdiction, as Oakdale contends that we lack jurisdiction. We note that, prior to the briefing in this case, Oakdale filed a motion to dismiss this appeal for lack of jurisdiction, but a panel of justices from this court denied the motion. Nevertheless, because we have an obligation at all times to ensure we have jurisdiction, we may revisit a previous denial of a motion to dismiss. *In re Marriage of Waddick*, 373 Ill. App. 3d 703, 705 (2007).

¶ 21     In McBride's jurisdictional statement, she invoked jurisdiction in this court under Illinois Supreme Court Rule 303 (eff. July 1, 2017), asserting that she filed her notice of appeal within 30 days of the trial court's March 15, 2024, order, which disposed of the rent issue. Conversely, Oakdale posits that McBride needed to file her notice of appeal within 30 days of the court's September 7, 2023, order, notwithstanding the fact that the court reserved ruling on the rent issue.

¶ 22     The only jurisdictional step to an appeal is by filing a timely notice of appeal. Ill. S. Ct. R. 301 (eff. Feb. 1, 1994); *Berg v. Allied Security, Inc.*, 193 Ill. 2d 186, 189 (2000). Absent a proper notice of appeal, the reviewing court lacks jurisdiction over the order or orders being appealed. *Schaffer v. Greenview Home Builders & Cabinetry Designers, Inc.*, 2020 IL App (2d) 190230, ¶ 39. Under Illinois Supreme Court Rule 301 (eff. Feb. 1, 1994), every final judgment is appealable as of right. But under Illinois Supreme Court Rule 303(a)(1) (eff. July 1, 2017), "if a timely

posttrial motion directed against the judgment is filed," a party must file its notice of appeal "within 30 days after the entry of the order disposing of the last pending postjudgment motion directed against that judgment or order."

¶ 23    In the instant case, because Oakdale's claims were decided in a bench trial, McBride had 30 days following the entry of the trial court's judgment to "file a motion for a rehearing, or a retrial, or modification of the judgment or to vacate the judgment or for other relief." 735 ILCS 5/2-1203(a) (West 2020). McBride's posttrial motion included various requests, including modification of the judgment. As such, her posttrial motion was directed against the judgment for purposes of Rule 303(a)(1), as it requested one or more of the types of relief specified in section 2-1203(a) of the Code of Civil Procedure (Code). See *Marsh v. Evangelical Covenant Church of Hinsdale*, 138 Ill. 2d 458, 461-62 (1990). And there is no question that McBride's posttrial motion was timely filed. Given this, McBride had to file her notice of appeal "within 30 days after the entry of the order disposing of the last pending postjudgment motion directed against that judgment ***." Ill. S. Ct. R. 303(a)(1) (eff. July 1, 2017).

¶ 24    On September 7, 2023, while the trial court denied the majority of McBride's posttrial motion, it did not dispose of the entirety of that motion because it reserved ruling on the rent issue. "When a court expressly reserves an issue, its decision cannot be considered a resolution of the reserved issue." *Save the Prairie Society v. Greene Development Group, Inc.*, 338 Ill. App. 3d 800, 803 (2003). That is to say, the court's September 7, 2023, order did not fully dispose of McBride's posttrial motion. Only on March 15, 2024, when the court ruled on the rent issue did the court finally dispose of McBride's posttrial motion. McBride filed her notice of appeal within 30 days of March 15, 2024, and therefore, we have jurisdiction under Rule 303(a)(1).

¶ 25                                    B. Mootness

¶ 26 Beyond the jurisdictional issue, relying on *Circle Management LLC v. Olivier*, 378 Ill. App. 3d 601, 607 (2007), Oakdale asserts that the issue of possession is moot in this case because McBride was evicted and relinquished possession of her unit. *Circle Management*, however, is an inapt comparison, as the case involved a lease (*id.* at 604), which is a contractual relationship between a landlord and tenant. *Spanish Court Two Condominium Ass'n v. Carlson*, 2014 IL 115342, ¶ 20. When a lease expires, the landlord and tenant's relationship ends. *Id.* ¶ 22.

¶ 27 Condominium properties are different. They are not primarily creatures of contract but rather of statute. *Id.* ¶ 21. When a condominium association prevails in an eviction action, as was the case here, the association-unit owner relationship does not end. *Id.* ¶ 23. "A unit owner does not cease to be a unit owner even if dispossessed of his or her unit, and the obligations of condominium ownership, including the obligation to pay assessments, continue unabated." *Id.* "[U]nlike an order of possession in favor of a landlord, an order of possession in favor of an association is intended to be temporary, not permanent, 'with possession eventually returning to the unit owner.' " *Id.* (quoting *Knolls Condominium Ass'n v. Harms*, 202 Ill. 2d 450, 457 (2002)). While Oakdale has been awarded possession of McBride's unit by prevailing in the eviction action against her, because its possession is intended to be temporary, not permanent (see *id.*), the fact that McBride has been temporarily dispossessed of her unit does not moot any of her claims.

¶ 28                    C. State of the Record on Appeal

¶ 29 Having addressed Oakdale's procedural challenges to this appeal, we also must address the state of the record on appeal before addressing the merits of McBride's appeal. It is well established that the "appellant has the burden to present a sufficiently complete record of the proceedings at trial to support a claim of error." *Foutch v. O'Bryant*, 99 Ill. 2d 389, 391 (1984). "Where the issue on appeal relates to the conduct of a hearing or proceeding, this issue is not

subject to review absent a report or record of the proceeding." *Webster v. Hartman*, 195 Ill. 2d 426, 432 (2001). "[I]n the absence of such a record on appeal, it will be presumed that the order entered by the trial court was in conformity with law and had a sufficient factual basis." *Foutch*, 99 Ill. 2d at 392. And "[a]ny doubts which may arise from the incompleteness of the record will be resolved against the appellant." *Id.*

¶ 30    Our supreme court rules provide the procedures for providing the reviewing court with a complete record on appeal. See Ill. S. Ct. Rs. 321 (eff. Oct. 1, 2021); 323, 324 and 325 (eff. July 1, 2017). According to the rules, the record must be arranged into three sections: a common law record, the report of proceedings and the trial exhibits, and all three must be certified by the clerk of the circuit court. Ill. S. Ct. R. 324 (eff. July 1, 2017). The common law record includes every document filed by the parties, and any orders or judgments issued by the trial court. Ill. S. Ct. R. 321 (eff. Oct. 1, 2021). Meanwhile, the report of proceedings "may include evidence, oral rulings of the trial judge, a brief statement of the trial judge of the reasons for his decision, and any other proceedings that the party submitting it desires to have incorporated in the record on appeal. The report of proceedings shall include all the evidence pertinent to the issues on appeal." Ill. S. Ct. R. 323 (eff. July 1, 2017). Importantly, Rule 323 requires that the court reporter "certify" the accuracy of a transcript included in the report of proceedings, which then must be "taken as true and correct unless shown to be otherwise." *Id.* Once the record is prepared, the clerk of the circuit court certifies the record, thus providing authentication to the record on appeal, and transmits the record to the appellate court. Ill. S. Ct. Rs. 324, 325 (eff. July 1, 2017).

¶ 31    This case involved a two-day trial with various exhibits being admitted into evidence by both parties. As to the transcripts of the trial, neither day's transcript was properly made part of the record on appeal. The transcript of the first day of trial was included as part of the appendix to

Oakdale's brief. As a general matter, a reviewing "court may not consider documents that are not part of the certified record on appeal." *Kensington's Wine Auctioneers & Brokers, Inc. v. John Hart Fine Wine, Ltd.*, 392 Ill. App. 3d 1, 14 (2009). "Attachments to appellate briefs that are not contained in the certified record on appeal cannot be used to supplement the record on appeal and are not properly before a reviewing court." *Id.* Applying this rule, the appellate court has refused to consider a transcript of proceedings attached to the appendix of a brief. See *In re Baby Girl F.*, 402 Ill. App. 3d 127, 129 n.1 (2008).

¶ 32    The transcript of the second day of trial was only included as an exhibit to McBride's posttrial motion. But, "[a] post-trial motion is not a substitute for a report of proceedings." *Altek, Inc. v. Vulcan Tube and Metals Co.*, 79 Ill. App. 3d 226, 229 (1979). There is nothing in Illinois Supreme Court Rule 323 (eff. July 1, 2017) that allows a party to rely on a copy of a transcript contained in the record on appeal by virtue of being an exhibit to a motion in lieu of that transcript being part of a properly authenticated report of proceedings. "Certification is designed to assure the accuracy of the record." *Ray v. Winter*, 67 Ill. 2d 296, 302-03 (1977). "A properly authenticated report of proceedings is essential to the presentation of a record of sufficient completeness to permit a challenge" to issues at trial. *W.E. Mundy Landscaping and Garden Center, Inc. v. Hish*, 187 Ill. App. 3d 164, 166 (1989). As a result, neither trial transcript is properly before this court, and we cannot consider either of them.

¶ 33    Turning to the trial exhibits, none of them were properly authenticated and included in the record on appeal. See Ill. S. Ct. R. 324 (eff. July 1, 2017). While a copy of minutes of an April 2019 meeting of Oakdale's board of managers—apparently a critical exhibit at trial—was attached as an exhibit to McBride's posttrial motion, this cannot replace the exhibit being properly authenticated by the clerk of the circuit court and being made part of the record on appeal in

accordance with our supreme court rules. Additionally, it appears that McBride introduced a bevy of exhibits at trial purporting to detail various checks that she sent to Oakdale that were cashed yet never credited to her account. But instead of including those exhibits as part of the record on appeal, McBride merely included a summary of them and attached the summary as an exhibit to her posttrial motion. A summary of exhibits is not a suitable replacement for the actual exhibits. See *In re K.S.*, 317 Ill. App. 3d 830, 832-33 (2000). As a result, none of the exhibits are properly before this court. With that discussion of the record on appeal, we turn to the merits of McBride's contentions on appeal with the caveat that, under *Foutch*, 99 Ill. 2d at 392, "[a]ny doubts which may arise from the incompleteness of the record will be resolved against" her, as the appellant.

¶ 34                           D. Striking of Counterclaims

¶ 35    With those preliminary issues addressed, we now turn to the merits of McBride's appeal, beginning with her contention that the trial court erred by striking her counterclaims because they were both true counterclaims, as opposed to affirmative defenses, and germane to the eviction proceedings.

¶ 36    McBride's first counterclaim, entitled "Plaintiff's Special Assessment was Illegally Levied Against Defendant-Counter-Plaintiff," challenged the legality of the special assessment related to the 2010 lawsuit filed by Oakdale against her. But in addition to challenging the legality of the special assessment through claiming the board of managers breached their fiduciary duty, McBride raised claims that the board of managers had a conflict of interest, engaged in a campaign of harassment against her, retaliated against her for exercising her rights under the First Amendment of the United States Constitution. (U.S. Const., amend. I), performed other illegal actions and a claim about *res judicata*.

¶ 37    Under section 2-603(a) of the Code (735 ILCS 5/2-603(a) (West 2020)), "[a]ll pleadings shall contain a plain and concise statement of the pleader's cause of action, counterclaim, defense, or reply." Moreover, "[e]ach separate cause of action upon which a separate recovery might be had shall be stated in a separate count or counterclaim, as the case may be and each count, counterclaim, defense or reply, shall be separately pleaded, designated and numbered, and each shall be divided into paragraphs numbered consecutively, each paragraph containing, as nearly as may be, a separate allegation." *Id.* § 2-603(b). The purpose of the requirements in section 2-603 "is to give notice to the court and to the parties of the claims being presented." *Smith v. Heissinger*, 319 Ill. App. 3d 150, 154 (2001). Additionally, under the Code, a party "may plead as many causes of action [or] counterclaims *** as they may have, and each shall be separately designated and numbered." 735 ILCS 5/2-613(a) (West 2020). But "separate theories of relief must be pled in separate counts; neither the court nor the parties should be placed in the position of trying to decipher a count to determine if there is more than one theory of relief in the count and, if so, how many." (Internal citation marks omitted.) *In re Estate of Yanni*, 2015 IL App (2d) 150108, ¶ 28.

¶ 38    In the instant case, McBride's first counterclaim commingled multiple causes of action within a single count that rendered it nearly impossible to discern her true cause of action against Oakdale. Because her first counterclaim did not state one cause of action, but rather raised multiple, the counterclaim violated the pleading requirements under the Code (see 735 ILCS 5/2-603(b); 613 (West 2020)) and could have been struck by the trial court on that basis. See *Rubino v. Circuit City Stores, Inc.*, 324 Ill. App. 3d 931, 938 (noting that, under section 2-603 of the Code, "[a] complaint may be dismissed for failure to meet statutory pleading requirements"). Although it does not appear that the court struck McBride's first counterclaim on this basis, we review the striking of a counterclaim *de novo* (*CIRAS, L.L.C. v. Borja*, 2023 IL App (1st) 221212-U, ¶ 18) and can

affirm on any basis supported by the record. *Messenger v. Edgar*, 157 Ill. 2d 162, 177 (1993). Consequently, we affirm the trial court's decision to strike McBride's first counterclaim.

¶ 39　We now turn to the trial court's striking of McBride's second counterclaim, which alleged that Oakdale violated section 19(b) of the Act (765 ILCS 605/19(b) (West 2020)) by failing to comply with 30 written requests to access its records. In *Spanish Court*, 2014 IL 115342, ¶ 12, our supreme court addressed whether a condominium association's alleged failure to maintain common elements was germane to an eviction proceeding based on unpaid assessments. The court concluded that "a unit owner's liability for unpaid assessments is not contingent on the association's performance." *Id.* ¶ 26. To this end, "[t]he unit owner cannot 'avoid' the duty to pay assessments, *i.e.,* the duty cannot be annulled, vacated, defeated, or invalidated [citation], and the association cannot refrain from enforcing that obligation." *Id.* "Accordingly, a unit owner's claim that its obligation to pay assessments was nullified by the association's failure to repair and maintain the common elements is contrary to the [] Act and is not a viable defense." *Id.* In other words, the unit owner's claim that the association had failed to maintain common elements was not germane to the eviction proceeding. *Id.* ¶ 35.

¶ 40　Turning back to the present case, the Act provides that it is the duty of the board of managers to keep detailed records about the operation of the association and to make those records available to a unit owner upon request. See 765 ILCS 605/18.4(i), 19 (West 2020)). Under *Spanish Court*, McBride's counterclaim alleging that Oakdale violated the Act by failing to abide by its recordkeeping obligations, an issue about whether Oakdale performed its obligations in accordance with the law, is not germane to this eviction proceeding based on unpaid common expenses. See *Hickory Heights Condominium Unit No. 1, Inc. v. Okoye*, 2023 IL App (1st) 221023-U, ¶¶ 5, 20 (concluding that, in an eviction action for unpaid common expenses, a unit owner's

affirmative defense that the association's board of managers was not elected in accordance with its bylaws and Illinois law was not germane to the eviction action because the issue was "not pertinent to [the unit owner's] duty to pay assessments"). As noted, we review this issue *de novo* (*CIRAS*, 2023 IL App (1st) 221212-U, ¶ 18) and can affirm on any basis supported by the record. *Messenger*, 157 Ill. 2d at 177. Consequently, we find that the court properly struck this counterclaim.

¶ 41                                  E. Limiting The Questioning

¶ 42     McBride next contends that the trial court abused its discretion when it limited her ability to present her case at trial. As noted, while we do not have the transcripts from the two days of trial, we do have the court's written order following the first day of trial where, on its own motion, it limited the remaining questioning by the parties, including McBride's attorney to 10 cross-examination questions of Arlen and 10 direct examination questions of McBride with the caveat that the questioning must be "germane to the issue of possession."

¶ 43     Based on the record, we cannot find any error. There is nothing inherently improper with the trial court limiting the parties' questioning at trial. See Ill. R. Evid. 611(a) (eff. Oct. 15, 2015) ("The court shall exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence so as to (1) make the interrogation and presentation effective for the ascertainment of the truth, (2) avoid needless consumption of time, and (3) protect witnesses from harassment or undue embarrassment."); *Neal v. Nimmagadda*, 279 Ill. App. 3d 834, 840 (1996) ("The extent of cross-examination is left to the broad discretion of the trial court."). Moreover, in an eviction trial, the court must limit the matters presented to only those "germane to the distinctive purpose of the proceeding." 735 ILCS 5/9-106 (West 2020). Together, the court had discretion to limit the extent of the parties' questioning in number and content. But that is not to say the court

has *carte blanche* to do so. The court can abuse its discretion if its limitation resulted in manifest prejudice to the opposing party. *McDonnell v. McPartlin*, 192 Ill. 2d 505, 533 (2000). But without the trial transcripts to know what McBride was able to present in her case and what questions her attorney asked of Arlen during cross-examination, we cannot discern what prejudice, if any, she suffered. In turn, we have no basis to find that the court abused its discretion in limiting McBride at trial. See *Foutch*, 99 Ill. 2d at 391-92.

¶ 44                              F. Trial Court's Trial Judgment

¶ 45     McBride next contends that the trial court's judgment in the amount of $24,434.75 was against the manifest weight of the evidence. "In a bench trial, the trial court must weigh the evidence and make findings of fact." *Eychaner v. Gross*, 202 Ill. 2d 228, 251 (2002). A reviewing court defers to the trial court's findings of facts "unless they are against the manifest weight of the evidence." *Id.* "A decision is against the manifest weight of the evidence only when an opposite conclusion is apparent or when the findings appear to be unreasonable, arbitrary, or not based on the evidence." *Id.* at 252.

¶ 46     In arguing that the trial court's judgment was against the manifest weight of the evidence, McBride notes that, based on the testimony of Arlen, Oakdale claimed that she owed $3,836.40 in common expenses. However, according to McBride, based on her exhibits and testimony, she made payments that Oakdale never credited to her account and Oakdale levied other improper amounts against her. McBride posits that, based on her testimony and exhibits, she actually had a positive balance in her account ledger, meaning she did not owe any common expenses. Thus, McBride asserts that Oakdale should not have prevailed in the litigation against her and not been entitled to any attorney fees. See 735 ILCS 5/9-111(a) (West 2020) (providing for the award of

"reasonable attorney's fees" and costs if the trial court finds that a condominium association is owed unpaid common expenses in an eviction action).

¶ 47    In making this argument, the chief evidence McBride relies upon are her exhibits. But, as discussed, the actual exhibits are not included in the record on appeal. Rather, there is only a summary of the exhibits, which she attached to her posttrial motion. In order for this court to conclude that the trial court's findings, namely its failure to credit her thousands of dollars in payments, was not based on the evidence or unreasonable, we axiomatically need to be able to review that evidence. A summary of the exhibits is not a suitable replacement for the actual exhibits for this court to properly provide the deference required under the manifest-weight standard of review. See *In re K.S.*, 317 Ill. App. 3d at 832. Likewise, as discussed, none of the trial transcripts are properly a part of the record on appeal. Given this, we must assume that the trial court's judgment was in conformity with law and had a sufficient factual basis. See *Foutch*, 99 Ill. 2d at 391. Consequently, we cannot find the court's judgment was against the manifest weight of the evidence.

¶ 48                           G. Mid-Trial Motion to Dismiss

¶ 49    McBride next contends that the trial court erred as a matter of law when it refused to consider her mid-trial motion to dismiss. As an initial matter, although McBride titled her motion as one to dismiss, it would have been more accurately titled as one for a directed finding (see *In re Estate of Coffman*, 2023 IL 128867, ¶ 51), as she sought a judgment in her favor and dismissal of the action against her based upon Oakdale's evidence or lack thereof. See 735 ILCS 5/2-1110 (West 2020). But even if the court did refuse to consider her motion, merely because the court might have erred in handling it, that does not mean the court would have committed reversible error. See *Orbeta v. Gomez*, 315 Ill. App. 3d 687, 690 (2000) (where the trial court applied the

- 18 -

wrong standard to a motion for directed finding, the error was not automatically reversible). And, based on the record on appeal, we cannot find reversible error. In McBride's motion, she argued chiefly that, based on Arlen's testimony and Oakdale's exhibits introduced through him, Oakdale violated provisions of the Act by failing to vote to authorize the litigation against her at an open meeting. However, as previously discussed, without the trial transcripts and the exhibits, we have no basis to find that the court erred in failing to enter a directed finding in McBride's favor. See *Foutch*, 99 Ill. 2d at 391.

¶ 50                           H. Substitution of Judge for Cause

¶ 51     McBride lastly contends that the trial court erred when it failed to refer her pretrial motion for substitution of judge for cause to another judge for consideration.

¶ 52     We briefly note that, when McBride filed her request for a substitution of judge for cause, she titled that request as a "[m]otion." Section 2-1001(a)(3) of the Code (735 ILCS 5/2-1001(a)(3) (West 2020)), which details a request for a substitution of judge for cause, refers to a "petition" as the proper vehicle, not a "motion." See *In re Marriage of O'Brien*, 2011 IL 109039, ¶ 28. Because the proper vehicle for McBride's request was a petition for substitution of judge for cause, we refer to that request as a petition hereafter. Under section 2-1001(a)(3)(iii) of the Code (735 ILCS 5/2-1001(a)(3)(iii) (West 2020)), "[u]pon the filing of a petition for substitution of judge for cause, a hearing to determine whether the cause exists shall be conducted as soon as possible by a judge other than the judge named in the petition." Although the statute provides that the petition should be heard by a different judge (*id.*), this right is not automatic. *In re Estate of Wilson*, 238 Ill. 2d 519, 553 (2010). Instead, to be entitled to a hearing before a second judge, the movant must "bring himself or herself within the provisions of the law." *Id.* To this end, the movant must make the

substitution request through a petition verified by affidavit, which sets "forth the specific cause for substitution." 735 ILCS 5/2-1001(a)(3)(ii) (West 2020).

¶ 53    While our supreme court has observed the threshold statutory requirements of a petition for substitution of judge for cause that must be met before the petitioner is entitled to a hearing before another judge, the court has also noted that the judge named in the petition may deny such a request based on the circumstances, namely the petition's timeliness and whether it was made in good faith. *In re Estate of Wilson*, 238 Ill. 2d at 556-57. As to the timeliness factor, though no deadline is imposed by statute, the petition "must be asserted at the earliest practical moment after the cause for the request has been discovered." (Internal quotation marks omitted.) *Id.* at 556. As to the motives factor, the judge "may take cognizance of the circumstances surrounding a motion for substitution of judge and inquire into the good faith of the motion." *Id.* at 557. "Where it is apparent that the request is not made in good faith but for purposes of delay," the denial of such a petition without a hearing before a second judge "does not constitute error." *Id.*

¶ 54    Turning to McBride's petition, based on the record properly before us, all we know is that the trial court denied the petition without referring it to another judge for consideration. But we do not know why the court did so, as the transcript from the first day of the trial and when the court denied McBride's petition is not properly in the record on appeal. However, the absence of the why here does not preclude our review because we review whether the petitioner made a threshold showing for her petition to be referred to another judge *de novo* (*Shachter v. City of Chicago*, 2011 IL App (1st) 103582, ¶¶ 22, 30), and we may affirm on any basis supported by the record. See *Peerless Enterprise Inc. v. Kruse*, 317 Ill. App. 3d 133, 141 (2000). Moreover, whether that threshold showing has been made is based entirely on the petition and the surrounding

circumstances, all of which are contained in the common law record. See *In re Estate of Wilson*, 238 Ill. 2d at 553-57.

¶ 55    In the instant case, regardless of whether McBride met the statutory threshold requirements for a petition for substitution of judge for cause, her petition was not timely. McBride filed her petition on April 27, 2023. Yet the cause she claimed formed the basis for the petition occurred weeks earlier when her attorney participated in the virtual meeting of the First Municipal Advisory Committee, when the court refused to give her "permission to take an interlocutory appeal" from its striking of her counterclaims and when the court offered allegedly legally untenable reasons for striking her counterclaims. McBride offered no explanation as to why she waited until the eve of trial to file her petition. Under these circumstances, McBride's petition was untimely. Consequently, the trial court's denial of McBride's petition was proper.

¶ 56                                    III. CONCLUSION

¶ 57    For the foregoing reasons, we affirm the judgment of the circuit court of Cook County.

¶ 58    Affirmed.